## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

KENNETH JOSEPH WOODARD, *on behalf of himself and all others similarly situated,*

          Plaintiff,

   v.

NAVIENT SOLUTIONS, LLC and
NAVIENT CREDIT FINANCE
CORPORATION,

          Respondents.

Case No. 8:23-CV-301

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, <u>AND CLASS REPRESENTATIVE SERVICE AWARDS</u>

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................ 4

III.    LAW AND ARGUMENT ................................................................................... 5

   A.  Legal Standard for Awarding Attorneys' Fees .................................................. 5

   B.  The Requested Fees Are Reasonable Under the Percentage-of- the-Benefit Method ....... 6

   C.  The Requested Fees are Reasonable Under the Lodestar Method .................................. 10

   D.  The Requested Attorneys' Fees Satisfy the *Johnson* Factors ........................................... 13

      1.  The Time and Labor Required .............................................................................. 14

      2.  The Novelty and Difficulty of the Legal Issues ................................................... 14

      3.  The Skill Required to Perform the Legal Service Properly, and the Experience,
          Reputations, and Ability of the Attorneys ........................................................... 16

      4.  The Monetary Amount Involved and the Results Obtained ................................ 17

      5.  The Remaining *Johnson* Factors Support the Request for Attorneys' Fees ......... 18

   E.  The Expenses and Costs Incurred Are Reasonable and Necessary to Achieve the Benefit
       Obtained .............................................................................................................. 19

   F.  The Class Representatives and Lead Plaintiffs are Entitled to Service Awards for Their
       Participation ........................................................................................................ 20

   G.  Conclusion .......................................................................................................... 21

# TABLE OF AUTHORITIES

*Allen v. Tobacco Superstore, Inc.*,
    475 F.3d 931 (8th Cir. 2007) ....................................................................................13

*Allicks v. Omni Specialty Packaging, LLC*,
    No. 4:19-CV-1038-DGK, 2021 WL 2188956 (W.D. Mo. May 28, 2021) ............................10

*Barfield v. Sho-Me Power Elec. Co-op.*,
    No. 2:11-CV-4321NKL, 2015 WL 3460346 (W.D. Mo. June 1, 2015)............................7, 13

*Beesley v. Int'l Paper Co.*,
    No. 3:06-CV-703-DRH-CJP, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ...............................9

*Blum v. Stenson*,
    465 U.S. 886 (1984)..............................................................................................6, 12

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)...................................................................................................5

*Bottoni v. Sallie Mae, Inc.*,
    No. C 10-03602 LB, 2013 WL 12312794 (N.D. Cal. Nov. 21, 2013) ....................................8

*Caligiuri v. Symantec Corp.*,
    855 F.3d 860 (8th Cir. 2017) .......................................................................................0

*Campbell v. Transgenomic, Inc.*,
    No. 4:17-CV-3021, 2020 WL 2946989 (D. Neb. June 3, 2020) ..................................5, 13, 21

*City of Riverside v. Rivera*,
    477 U.S. 561 (1986)...................................................................................................6

*Cleveland v. Whirlpool Corp.*,
    No. 20-CV-1906, 2022 WL 2256353 (D. Minn. June 23, 2022)...........................................21

*Cosgrove v. Citizens Auto. Fin., Inc.*,
    No. CIV.A. 09-1095, 2011 WL 3740809 (E.D. Pa. Aug. 25, 2011) .......................................9

*In re Crocker*,
    941 F.3d 206 (5th Cir. 2019), *as revised* (Oct. 22, 2019)......................................................15

*Cullen v. Whitman Med. Corp.*,
    197 F.R.D. 136 (E.D. Pa. 2000)....................................................................................8

*Custom Hair Designs by Sandy, LLC v. Cent. Payment Co., LLC*,
    No. 8:17CV310, 2022 WL 3445763 (D. Neb. Aug. 17, 2022)...............................................21

*Erickson v. Credit Bureau Servs., Inc.*,
No. 8:11CV215, 2013 WL 672281 (D. Neb. Feb. 22, 2013)....................................................2

*Ewald v. Royal Norwegian Embassy*,
No. 11-CV-2116 ......................................................................................................15, 17

*Galloway v. Kansas City Landsmen, LLC*,
833 F.3d 969 (8th Cir. 2016) ....................................................................................6

*Gradie v. C.R. England, Inc.*,
No. 2:16-CV-00768-DN, 2020 WL 6827783 (D. Utah Nov. 20, 2020)...................................8

*In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*,
No. MDL 05-1708, 2008 WL 682174 (D. Minn. Mar. 7, 2008) ...........................................19

*Hanig v. Lee*,
415 F.3d 822 (8th Cir. 2005) ..................................................................................12

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
851 F. Supp. 2d 1040 (S.D. Tex. 2012) ....................................................................7

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)..............................................................................................17

*Holman v. Student Loan Xpress, Inc.*,
778 F. Supp. 2d 1306 (M.D. Fla. 2011) ....................................................................8

*Huyer v. Buckley*,
849 F.3d 395 (8th Cir. 2017) ..........................................................................5, 7, 10

*I-Sys., Inc. v. Softwares, Inc.*,
No. 02-cv-1951, 2005 WL 1430323 (D. Minn. Mar. 7, 2005) ..............................................16

*Johnson v. Comerica Mortg. Corp.*,
83 F.3d 241 (8th Cir. 1996) ....................................................................................10

*Keil v. Lopez*,
862 F.3d 685 (8th Cir. 2017) ..............................................................................10, 11

*League of Women Voters of Mo. v. Ashcroft*,
5 F.4th 937 (8th Cir. 2021) ................................................................................13, 14

*Melby v. Am.'s MHT, Inc.*, No. 3:17-CV-155-M, 2018 WL 10399003 (N.D. Tex.
July 5, 2018) ........................................................................................................8

*Morales v. Farmland Foods, Inc.*,
No. 8:08CV504, 2013 WL 1704722 (D. Neb. Apr. 18, 2013) ..............................................12

iv

*Nelson v. Wal–Mart Stores, Inc.*,
   No. 05-cv-000134, 2009 WL 2486888 (E.D. Ark. Aug. 12, 2009) ........................................10

*Petrovic v. Amoco Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) ........................................................................................5, 10

*Rawa v. Monsanto Co.*,
   934 F.3d 862 (8th Cir. 2019) ................................................................................................5

*Rawa v. Monsanto Co.*,
   No. 4:17CV01252 AGF, 2018 WL 2389040 (E.D. Mo. May 25, 2018), *aff'd*,
   934 F.3d 862 (8th Cir. 2019) ........................................................................................11, 20

*Ray v. Lundstrom*,
   No. 8:10CV199, 2012 U.S. Dist. LEXIS 160089, 2012 WL 5458425 (D. Neb.
   Nov.8, 2012) ..........................................................................................................................7

*Smith v. CRST Van Expedited, Inc.*,
   No. 10-CV-1116- IEG WMC, 2013 WL 163293 (S.D. Cal. Jan. 14, 2013) ..............................8

*In re St. Paul Travelers Sec. Litig.*,
   No. CIV. 04-3801 .................................................................................................................11

*In re TJX Companies Retail Sec. Breach Litig.*,
   584 F. Supp. 2d 395 (D. Mass. 2008) ....................................................................................7

*Travelers Prop. Cas. Ins. Co. of Am. v. Nat'l Union Ins. Co. of Pittsburgh, Pa.*,
   735 F.3d 993 (8th Cir. 2013) .................................................................................................5

*Tussey v. ABB, Inc.*,
   No. 06-CV-04305-NKL, 2019 WL 3859763 (W.D. Mo. Aug. 16, 2019) ..........................9, 21

*In re U.S. Bancorp Litig.*,
   291 F.3d 1035 (8th Cir. 2002) ..............................................................................................7

*In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*,
   631 F. Supp. 2d 1151 (D. Minn. 2009) .................................................................................11

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) .....................................................................5, 6, 10, 13

Class Counsel[1] for Plaintiff Kenneth Joseph Woodard ("Woodard"), on behalf of himself and all others similarly situated (collectively, "Plaintiffs") respectfully move this Court for an Order awarding Class Counsel legal fees of $14 million; reimbursement of $72,791.84 in expenses, estimated costs of $500,000 in Notice and Settlement Administration costs; and $15,000 Class Representative service awards for the Class Representatives and Lead Plaintiffs in this Matter and related cases, in conjunction with the proposed Settlement Agreement with Defendants Navient Solutions, LLC and Navient Credit Finance Corporation (collectively, "Navient" or "Defendants"). Class Counsel have previously moved the Bankruptcy Court for preliminary approval of the Settlement Agreement [Dkt. No. 77], and received such approval on July 6, 2023 [Dkt. No. 93].

## I. INTRODUCTION

Class Counsel seek a fee award of $14 million and an award of costs and expenses totaling $72,791.84 arising from their multi-year pursuit of recovery for the student loan borrowers that comprise this nationwide Class.[2] Class Counsel achieved the tremendous results in this case – which includes 100% discharge of debt for all class members totaling $54 million in debt relief and $28 million in damages for Navient's conduct in collecting on discharged debt -- by bringing multiple class action lawsuits in courts in California, Nebraska, Michigan, and New York to pressure the Defendants to settle the case on a nationwide basis.[3] The strength of the Settlement

---

[1] Capitalized terms have the definitions assigned to them in Plaintiffs' Motion for Preliminary Approval [Dkt. No. 77] and Memorandum of Law in Support [Dkt. No. 77-1].

[2] Class Counsel note that the Notice sent to Class Members advised that "[i]f the settlement is approved, Class Counsel will apply to the District Court for an award of attorneys' fees and for reimbursement of case expenses to be paid out of the Settlement Fund. Class Counsel expect to apply for an amount of fees not to exceed $14,000,000." *See* Notice of Proposed Class Action Settlement at p. 8, Section 18 (Rec. Dkt. 77-5).

[3] Woodard recognizes that he and Class Counsel will not be entitled to the fees, expenses, and the service awards requested in this Motion unless this Court enters an order granting final approval of the Settlement Agreement. Furthermore, the relief requested in this Motion is not intended to alter the procedures for disbursement of these amounts as set forth in the Settlement Agreement.

and value given to class members is exemplified by the high claims rate, which is virtually unheard of in the modern class action settlement era. As detailed in a recent 2019 Federal Trade Commission study, the median consumer class action claims rate is 9%.[4] In shocking contrast, 23% -- or over 2,600 claim forms out of the 11,791 forms mailed to class members -- were timely filed with the Settlement Administrator in this Settlement.[5] The timely-filed claims total $18,571,908.07 in Damages Post-Discharge, which means that borrowers have filed claims for almost 50% of the total possible damages of $37 million. Importantly, this strong response rate virtually ensures that none of the Settlement Fund will revert back to the Defendants, as allowed under the Settlement Agreement.[6]

Class Counsel originally filed the *Woodard* putative class action lawsuit in December 2021, but Class Counsel has also simultaneously pursued three other class action lawsuits in other jurisdictions:

- On July 2, 2020, Stephanie A. Mazloom filed an adversary complaint (Adv. Proc. No. 20-80033) captioned *Stephanie Mazloom v. Navient Solutions LLC et al* in the United States Bankruptcy Court for the Northern District of New York ("*Mazloom*").

- On August 31, 2020, Oscar D. Teran filed an adversary complaint (Adv. Proc. No. 20-03075) captioned *Oscar D. Teran v. Navient Solutions, LLC et al* in the United States Bankruptcy Court for the Northern District of California ("*Teran*").

- On March 4, 2022, Kelly K. Coyle filed an adversary complaint (Adv. Proc. No. 22-80018) captioned *Kelly K. Coyle v. Navient Solutions LLC et al* in the United States Bankruptcy Court for the Western District of Michigan ("*Coyle*").

---

[4] *See* "FTC's comprehensive study finds median consumer class action claims rate is 9%," Sept. 10, 2019, available at https://www.reuters.com/article/us-otc-claimsrate-idUSKCN1VV2QU/#:~:text=FTC's%20comprehensive%20study%20finds%20median,claims%20rate%20is%209%25%20%7C%20Reuters.
As detailed in the news article, a prior 2013 study by law firm Mayer Brown found claims rates of 1-12%, and a 2015 report by the Consumer Financial Protection Bureau reported a median claims rate of 8%.
[5] *See* Declaration of Shandarese Garr in Support of Motion for Final Approval of Settlement and Attorneys' Fees, attached hereto as Exhibit A.
[6] *See* Stipulation of Settlement, Section 8.11 (Rec. Dkt. 77-3).

Motions for class certification were filed in all four cases. On March 8, 2023, the *Woodard* Court certified a class covering all borrowers who received discharges in bankruptcy courts in the Eighth Circuit. Just three weeks later on March 30, 2023, the *Teran* court granted a motion for class certification, certifying a damages class covering all borrowers who received discharges in bankruptcy within the Ninth Circuit, and a nationwide injunctive class.  Motions for class certification were fully briefed and argued in both *Coyle* and *Mazloom* as well, but the Settlement was reached with Defendants before those respective courts ruled on class certification.

The concerted and methodical effort by Class Counsel across these four cases exerted significant pressure on the Defendants and resulted in substantial recovery via Settlement for the nationwide Class, including:

- $54 million in debt relief, as Navient will never again attempt to collect on the Covered Student Loans.

- The opportunity for Class Members to make a claim for any payments they made from their personal funds to Navient after their bankruptcy discharge for their pro rata share of a $28 million Settlement Fund, less attorneys' fees, costs and expenses.

- Navient agreed to take steps to either delete trade lines at Credit Reporting Agencies or update the trade lines to reflect that the loan was subject to a bankruptcy discharge.

- Navient also agreed to business practice enhancements to ensure that the student loan servicer does not collect on similar loans post-bankruptcy discharge in the future, thus protecting future borrowers who may file bankruptcy.

Throughout this years-long litigation fight with Defendants, Class Counsel have briefed and argued countless motions, including the arbitrability of the asserted claims; the scope and applicability of the exceptions to discharge set forth in 11 U.S.C. §523(a)(8); the geographical limitations on a court's ability to enforce discharge injunctions; discovery disputes, summary judgment motions regarding particular loan programs, and motions for class certification. Through its tireless efforts, Class Counsel were able to obtain an extremely favorable recovery for the Class.

In addition to the request for fees and reimbursement for expenses, Class Counsel request service awards of $15,000 be paid to Class Representative Woodard as well as the other Class Representatives and Lead Plaintiffs in the related cases to compensate them for their substantial participation in their respective cases, which ultimately led to the nationwide settlement in *Woodard*. The service awards represent a reasonable approximation of the value of the time and effort expended by the Class Representatives and Lead Plaintiffs in these actions, as further detailed in their supporting declarations. Class Counsel also seek reimbursement of $72,791.84 in expenses that they have incurred over the course of this multi-year litigation, as well as Notice and Settlement Administration costs that are currently projected to total $500,000.[7]

Given their exhaustive work in the case – and substantial recovery for Class Members across the nation -- this Court should grant Class Counsel's requests for fees and expenses, Notice and Settlement Administration costs, and the Class Representative service awards of $15,000, as discussed more fully below.

## II. BACKGROUND

This memorandum incorporates by reference the Background section of Plaintiffs' Memorandum of Law in Support  of Plaintiffs' Motion for Final Approval [Rec. Doc. 9-1 at 3-7], which details the risks inherent in this case; the considerable litigation efforts and expenses undertaken by Class Counsel representing the 11,777 Class Members; the efforts of the Class Representative, Kenneth Joseph Woodard, and other Class Representatives and Lead Plaintiffs in related cases; and the substantial relief that Class Members will receive under the proposed Settlement Agreement.

---

[7] Class Counsel note that Notice and Settlement Administration costs will continue to accrue as the Settlement Administrator processes claims and administers payment, should this Court grant final approval to the Settlement.

### III. LAW AND ARGUMENT

### A. Legal Standard for Awarding Attorneys' Fees

Federal Rule of Civil Procedure 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." The Supreme Court has "recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). In measuring the reasonableness of a request for attorneys' fees in a class action in the Eighth Circuit, "The district court has discretion to use either a lodestar or percentage-of-the-fund method in determining an appropriate recovery." *Rawa v. Monsanto Co.*, 934 F.3d 862, 870 (8th Cir. 2019) (internal quotations omitted). While it is "within the discretion of the district court to choose which method to apply," *Huyer v. Buckley,* 849 F.3d 395, 398 (8th Cir. 2017), "use of the percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well established.'" *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005) (citation omitted); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999) ("It is well established in this circuit that a district court may use the "percentage of the fund" methodology to evaluate attorney fees in a common-fund settlement."). In common fund cases such as this one, courts "have recognized an even greater degree of discretion and have stated that district courts may elect between a lodestar-type analysis or a percent-of-recovery analysis." *Travelers Prop. Cas. Ins. Co. of Am. v. Nat'l Union Ins. Co. of Pittsburgh, Pa.*, 735 F.3d 993, 1002 (8th Cir. 2013).

Regardless of chosen method for evaluating the fee request, however, each calculation can then be weighed against the factors enumerated in *Johnson v. Georgia Highway Exp., Inc.* –

commonly referred to as the *Johnson* factors -- as a "cross-check" of reasonableness. *See, e.g.*, *Campbell v. Transgenomic, Inc.*, No. 4:17-CV-3021, 2020 WL 2946989, at *3–4 (D. Neb. June 3, 2020) ("Under either the lodestar or percentage-of-the-benefit method, the Court may determine the reasonableness of the fee award by considering relevant factors from the twelve factors" enumerated in *Johnson*.). As demonstrated below, the proposed fee award in this Settlement can meet the burdens of both the percentage method or the lodestar method, and can also satisfy the *Johnson* factors, thus demonstrating the inherent reasonableness of the requested attorneys' fees.

**B. The Requested Fees Are Reasonable Under the Percentage-of- the-Benefit Method**

The Supreme Court has expressly endorsed the percentage of recovery method for awarding fees in class actions, noting that "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984). As noted in *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig*., "one of the primary advantages of the [percentage of recovery] method is that it is thought to equate the interests of class counsel with those of the class members and encourage class counsel to prosecute the case in an efficient manner." After all, "[t]he amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded[.]" *City of Riverside v. Rivera,* 477 U.S. 561, 574, (1986).

In utilizing the "percentage of the benefit" method, "the attorney is awarded some fraction of the common fund the attorney successfully gathered in the litigation, like the contingent fee arrangements common in private litigation." *Galloway v. Kansas City Landsmen, LLC*, 833 F.3d 969, 972 (8th Cir. 2016). Notably, "[t]here are strong policy reasons behind the judicial and legislative preference for the percentage of recovery method of determining attorney fees in these cases," such as encouraging attorneys to bring actions to redress wrongs where it may not be economically feasible or procedurally efficient to pursue the damages claims individually. *Id.*

Under the percentage method, courts in the Eighth Circuit have frequently awarded attorney fees between 25 to 36 percent of the common fund, and even as high as 38 percent. *See, e.g., Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) ("Although 38% is on the high end of the typical range, we cannot say that it is unreasonable when compared to other awards within this circuit."); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) ("[W]e find no abuse of discretion in the district court's awarding 36% to class counsel who obtained significant monetary relief on behalf of the class."); *Ray v. Lundstrom,* No. 8:10CV199, 2012 U.S. Dist. LEXIS 160089, at *11–12, 2012 WL 5458425 (D. Neb. Nov.8, 2012) (awarding one-third of $3.1 million fund in fees, plus separate reimbursement from the settlement fund of $77,900 in expenses); *Barfield v. Sho-Me Power Elec. Co-op.*, No. 2:11-CV-4321NKL, 2015 WL 3460346, at *4 (W.D. Mo. June 1, 2015) ("At one-third of the value of the KAMO Settlement as a whole, the fee-and-expense award falls within the range of percentage-fee awards found reasonable in the Eighth Circuit.").

Importantly, when determining the total value of recovery obtained in a Settlement, courts do not consider merely the monetary payments made directly to class members. "[W]hen confronted with reversionary common fund or claims-made settlements, [this Court] will award attorneys' fees *by reference to the value of benefits actually put in the hands of the class members.*" *In re TJX Companies Retail Sec. Breach Litig.*, 584 F. Supp. 2d 395, 410 (D. Mass. 2008) (emphasis added); *see also In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1074 (S.D. Tex. 2012) (citing *In re TJX Companies* when determining that the value of benefits in the *Heartland* Settlement could include both direct compensation paid to the class and, in that case, 50% of any cy pres benefits paid to third parties when determining the reasonableness of the requested attorney fee award).

7

The fact that much of the relief in this case is in the form of debt relief rather than a direct monetary payment does not render that relief non-beneficial to the class. Multiple courts have recognized that debt forgiveness—even partial debt forgiveness, unlike the complete debt forgiveness obtained for class members here—constitutes a valid benefit to class members. *See, e.g., Melby v. Am.'s MHT, Inc.*, No. 3:17-CV-155-M, 2018 WL 10399003, at *4 (N.D. Tex. July 5, 2018) ("Given that there was a significant risk that, absent the settlement, class members would have to pay the full balance due under the IPAs as well as late fees and interest thereunder, the settlement is a substantial benefit for the class members."); *Holman v. Student Loan Xpress, Inc.*, 778 F. Supp. 2d 1306, 1314 (M.D. Fla. 2011) (awarding attorney's fees for a settlement that consisted primarily of "reduced student loan obligations through forgiveness of principal and interest, interest rate modification, and favorable credit reporting."); *Cosgrove v. Citizens Auto. Fin., Inc.*, No. CIV.A. 09-1095, 2011 WL 3740809, at *8 (E.D. Pa. Aug. 25, 2011) (approving attorneys' fees with a lodestar multiplier of 2.14 in a case involving a settlement where debt relief amounted to 75% of value of settlement); *Gradie v. C.R. England, Inc.*, No. 2:16-CV-00768-DN, 2020 WL 6827783, at *3, *15 (D. Utah Nov. 20, 2020) (approving attorneys' fees of $1.44 million in a $18.6 million class action settlement comprised of a $3.6 million cash payment and $15 million in debt relief); *Bottoni v. Sallie Mae, Inc.*, No. C 10-03602 LB, 2013 WL 12312794, at *5 (N.D. Cal. Nov. 21, 2013) (awarding class counsel attorneys' fees of $1.2 million because the "lawsuit conferred a significant benefit on a large class of persons by substantially reducing the collection charges assessed to over 40,000 Sallie Mae borrowers and co-borrowers"); *Smith v. CRST Van Expedited, Inc.,* No. 10-CV-1116- IEG WMC, 2013 WL 163293, at *5 (S.D. Cal. Jan. 14, 2013) ("The settlement provides for, and class counsel here seeks, an award of $875,000 in fees which constitutes 33 1/3% of the cash payment but only 7.5% of the total $11,650,000 financial value of

the settlement," which included approximately $9 million in debt relief); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 146 (E.D. Pa. 2000) (approving attorneys' fees of $2,395,241 to class counsel, which represented one-third of the "net settlement" of $5.97 million in cash payments and $1.3 million in loan forgiveness to class members).

Courts must also weigh the inherent value of any additional relief obtained as the result of injunctions, temporary restraining orders, or other similar actions that grant class members non-monetary relief through the Settlement. "A court must also consider the substantial affirmative relief when evaluating the overall benefit to the class. . . . [T]his Court acknowledges the importance of taking the affirmative relief into account, in addition to the monetary relief, so as to encourage attorneys to obtain effective affirmative relief." *Beesley v. Int'l Paper Co.*, No. 3:06-CV-703-DRH-CJP, 2014 WL 375432, at *1 (S.D. Ill. Jan. 31, 2014) (citing Manual for Complex Litigation, Fourth, § 21.71, at 337 (2004)); *see also Tussey v. ABB, Inc.*, No. 06-CV-04305-NKL, 2019 WL 3859763, at *2 (W.D. Mo. Aug. 16, 2019) ("[T]he benefit [to Class Members] should be based on both the monetary and the non-monetary value of the settlement.").

Here, the actual monetary benefits delivered to the Class Members include $54 million in debt forgiveness (and the associated credit repair), and $28 million in restitution. In addition, as a result of an April 2021 agreement between Class Counsel and Defendants in the *Mazloom* case, Navient agreed to forebear collection on the loans during the pendency of the litigation, which gave borrowers over 2-1/2 years of payment reprieve.[8] Furthermore, Navient will institute business practices such that it will not collect on these types of loans in the future post-bankruptcy discharge, providing benefit for all borrowers that may someday declare bankruptcy. Thus, with an estimated total recovery of over $82 million, Class Counsel's motion for $14 million in

---

[8] *See* Class Counsel's April 26, 2021, letter to the *Mazloom* Court and Exhibit A to that letter, attached hereto as Exhibit B.

attorneys' fees represents approximately **17%** of the total recovery for student loan borrowers through this Settlement. The Court should therefore find that the fee request is reasonable under the percentage of benefit method because it is well below the standard rate of 25-36% accepted in this Circuit.

### C. The Requested Fees are Reasonable Under the Lodestar Method

Under the lodestar method of calculating attorneys' fees, the "hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can then be adjusted, up or down, to reflect the individualized characteristics of a given action." *Johnson v. Comerica Mortg. Corp.,* 83 F.3d 241, 244-45 (8th Cir. 1996). Courts in the Eighth Circuit may use the lodestar method to double-check the result of the percentage-of-the-benefit method of awarding attorney fees. *See, e.g.*, *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017) ("Although not required to do so, the court verified the reasonableness of its award by cross-checking it against the lodestar method."); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999) (noting that lodestar calculations are "sometimes warranted to double-check the result of the 'percentage of the fund' method"). As the district court observed in *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,

> The lodestar cross-check need entail neither mathematical precision nor bean counting but instead is determined by considering the unique circumstances of each case. The resulting multiplier need not fall within any pre-defined range, so long as the court's analysis justifies the award, such as when the multiplier is in line with multipliers used in other cases. As stated before, the lodestar cross-check does not trump the court's primary reliance on the percentage of common fund method.

364 F. Supp. 2d 980, 999 (D. Minn. 2005).

In the Eighth Circuit, attorney fee requests with lodestar multipliers ranging from 1.5 to as high as 5.6 have been approved. *See e.g.,* ̲Huyer v. Buckley, 849 F.3d 395, 399-400 (8th Cir. 2017) (approving an award with a lodestar multiplier of 1.82 and noting that multipliers of up to 5.6 have

10

been approved in the Eighth Circuit); *Nelson v. Wal–Mart Stores, Inc.*, No. 05-cv-000134, 2009 WL 2486888, at *2 (E.D. Ark. Aug. 12, 2009) (approving multiplier of 2.5 and citing cases within the Eighth Circuit approving multipliers of up to 5.6); *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017) (approving a lodestar multiple of 2.7); *Allicks v. Omni Specialty Packaging, LLC*, No. 4:19-CV-1038-DGK, 2021 WL 2188956, at *3 (W.D. Mo. May 28, 2021) (approving lodestar of 3.3 and noting that "given the unique facts and circumstances of this case, it is not unreasonable"); *In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 631 F. Supp. 2d 1151, 1160 (D. Minn. 2009) ("To reflect counsel's high quality work in the face of considerable risk and uncertainty, a 2.75 time enhancement of the lodestar is warranted."); *Rawa v. Monsanto Co.*, No. 4:17CV01252 AGF, 2018 WL 2389040, at *9 (E.D. Mo. May 25, 2018), *aff'd*, 934 F.3d 862 (8th Cir. 2019) (affirming an attorney fee award with a lodestar multiplier of 5.3); *In re St. Paul Travelers Sec. Litig.*, No. CIV. 04-3801 JRTFLN, 2006 WL 1116118, at *1 (D. Minn. Apr. 25, 2006) (approving a fee request with a lodestar multiplier of 3.9).

As detailed more fully in Exhibit C,[9] and supported by the Declarations of Class Counsel,[10] Class Counsel recorded a total of 6,329.85 hours totaling a lodestar amount of $4,171,947.00, which was accumulated over three years prosecuting the four separate cases across the nation that were ultimately resolved via this Settlement. The breakdown per firm of hours and lodestar total is as follows:

- Fishman Haygood, LLP: 1,513.80 hours totaling $808,890.00
- Jones Swanson & Huddell, LLC: 1,134.55 hours totaling $542,922.50
- Boies Schiller Flexner LLP: 2,162.10 hours totaling $1,862,133
- Francis Mailman Soumilas, PC: 1,380.30 hours totaling $873,846.

---

[9] *See* Summary Table of Class Counsel Hours and Rates, attached hereto as Exhibit C.
[10] *See* Declaration of Jason W. Burge, attached hereto as Exhibit D; Declaration of Lynn E. Swanson, attached hereto as Exhibit E; Declaration of Adam R. Shaw, attached hereto as Exhibit F; and Declaration of Jim Francis, attached hereto as Exhibit G.

- The Law Office of James Michel: 139.1 hours totaling $84,155.50.

The hourly rates utilized by Class Counsel in its lodestar analysis are reasonable in light of prevailing market rates for attorneys with similar skill levels in complex class action litigation. *Erickson v. Credit Bureau Servs., Inc.*, No. 8:11CV215, 2013 WL 672281, at *4 (D. Neb. Feb. 22, 2013) ("The market value in the relevant legal community of the legal services performed is used to determine a reasonable attorney fee."); *Blum v. Stenson*, 465 U.S. 886, 895–96 n. 11 (1984) (noting that a reasonable hourly rate is one "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation"). Out-of-state attorneys, however, should not be limited to local rates when the type of litigation requires particular expertise and knowledge uncommon to the local market. *See Morales v. Farmland Foods, Inc.*, No. 8:08CV504, 2013 WL 1704722, at *10 (D. Neb. Apr. 18, 2013) ("Notably, the defendant is represented by a national law firm and is presumably paying rates that would be appropriate in the Atlanta market. The defendant gains the advantage of the resources that a large, well-financed, 'big-city' firm can bring to the litigation. Under these circumstances it would not be fair to constrain the plaintiffs to low legal rates and inadequate resources."). Further, as noted above, this Settlement benefitted from cases originally brought in California and New York, and attorneys from those jurisdictions should not be constrained by lower market rates in Nebraska because the Settlement is being finalized through this jurisdiction. Importantly, "[w]hen determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates." *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005).

In this Settlement, Class Counsel's rates range from $150 to $380 for law clerks, paralegals and support staff; $450 to $900 for New Orleans-based attorneys; $465 to $935 for Philadelphia-based attorneys; and $670 to $1,290 for New York-based counsel. These hourly rates are in accord

with prevailing market rates for these firms in their respective forums.[11] For these reasons, this

Court should find that the requested fee award of $14 million – which represents a 3.35 lodestar

multiplier -- is a reasonable fee under the lodestar method.

### D. The Requested Attorneys' Fees Satisfy the *Johnson* Factors

Regardless of whether a district court uses the percentage method or the lodestar method,

the Eighth Circuit "has approved consideration of the twelve factors set forth in *Johnson*" to further

weigh the reasonableness of a fee request. *Barfield v. Sho-Me Power Elec. Co-op.*, No. 2:11-CV-

4321NKL, 2015 WL 3460346, at *5 (W.D. Mo. June 1, 2015). *See also Allen v. Tobacco*

*Superstore, Inc.*, 475 F.3d 931, 944 (8th Cir. 2007) ("The district court considered the twelve

factors outlined in *Johnson* to calculate the final fee award and did not find any basis for adjusting

the lodestar.").

The *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases.

*Campbell v. Transgenomic, Inc.*, No. 4:17-CV-3021, 2020 WL 2946989, at *3–4 (D. Neb. June

3, 2020).  The district court need not examine each of the Johnson factors in great detail, but only

those that are "relevant to this litigation." *League of Women Voters of Mo. v. Ashcroft*, 5 F.4th

937, 941 (8th Cir. 2021); *see also In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364

F. Supp. 2d 980, 993 (D. Minn. 2005) ("Plainly, not all of the individual *Johnson* factors will

apply in every case, so the court has wide discretion as to which factors to apply and the relative

---

[11] *See* Exhibits D-G, Declarations of Class Counsel.

weight to assign to each."). In the present case, Class Counsel's requested fee meets the burden of the *Johnson* factors, as discussed more fully below.

### 1. The Time and Labor Required

The time and effort expended by Class Counsel in prosecuting this Class Action and reaching this Settlement establishes that the requested fee is justified. The Declarations submitted by the law firms that served as Class Counsel[12] detail the substantial efforts they undertook to prosecute Plaintiff's claims over more than three years of litigation, recording over 6,300 hours of legal work in pursuit of this case. Class Counsel, among other things:

- Spent countless hours researching the applicable law, reviewing initial documents, and drafting the motion for class certification in this case;

- Briefed and argued motion to demand arbitration in *Woodard*;

- Briefed and defended a motion for summary judgment in *Mazloom*, both on the merits of the case and on the jurisdiction of the court;

- Worked with experts on reports highlighting the major issues in the case, including prepping experts for depositions;

- Reviewed tens of thousands of pages of materials in discovery, and engaged in 6 depositions around the country, including a 30(b)(6) deposition; and

- Participated in four separate mediation sessions, including a two-day, in-person mediation session, attempting to resolve the case.

The substantial time and effort devoted to this case by Class Counsel and their vigorous pursuit of this litigation in four separate jurisdictions across the nation were critical to obtaining the favorable result achieved by the Settlement, and confirms that the fee request is reasonable.

### 2. The Novelty and Difficulty of the Legal Issues

The next *Johnson* factor examines the challenges presented by the specific and unique legal issues in the case. *League of Women Voters of Missouri v. Ashcroft*, 5 F.4th 937, 941 (8th Cir.

---

[12] *See* Exhibits D-G, Declarations of Class Counsel.

14

2021) (discussing the district court's use of the *Johnson* factors, including the novelty and difficult of the issues presented, in approving the fee award). Courts will look "at the significance of the legal issues on which the plaintiff prevailed and the public purpose served by the litigation." *Ewald v. Royal Norwegian Embassy*, No. 11-CV-2116 SRN/SER, 2015 WL 1746375, at *7 (D. Minn. Apr. 13, 2015) (citing *Milner v. Farmer's Ins. Exch.,* 748 N.W.2d 608, 623 (Minn.2008).

As noted above, Class Counsel recorded over 6,300 hours over three years pursuing this matter and related cases, a reflection of the difficulty of obtaining rulings that the Covered Loans were dischargeable in bankruptcy that would protect borrowers nationwide. Importantly, although Class Counsel were able to obtain a settlement for similar borrowers in the Fifth Circuit in *Evan Brian Crocker v. Navient Solutions, LLC et al*, Adv. Proc. No. 16-03175 (S.D. Tex. 2021), the Defendants continued to contest dischargeability, the jurisdiction of the district courts to enforce the bankruptcy discharges, arbitrability, and the power of the district courts to grant the requested relief. As previously noted, Class Counsel filed four separate class action lawsuits – covering the Second, Sixth, Eighth and Ninth Circuits – to continue their concerted attack against the Defendants to grant relief to borrowers nationwide, not merely circuit by circuit or district by district as the Defendants argued.

Class Counsel had to defeat numerous challenges as to arbitration, jurisdiction, and the merits of dischargeability to ultimately arrive at the proposed Settlement. Even though Class Counsel obtained a ruling from the Fifth Circuit on the merits of the case, which represents the first time an appellate court has specifically ruled that these types of loans are dischargeable in bankruptcy, the Defendants continued to fight the Fifth Circuit's holding in other jurisdictions.[13] This was a heavily litigated and risky case. All of these challenges presented risks that could have

---

[13] *See In re Crocker*, 941 F.3d 206 (5th Cir. 2019), *as revised* (Oct. 22, 2019).

ultimately resulted in zero recovery, and yet, they were overcome to reach this Settlement. The novelty and difficulty of the legal issues is easily demonstrated in this case, further justifying the reasonableness of this requested attorneys' fee award.

### 3. The Skill Required to Perform the Legal Service Properly, and the Experience, Reputations, and Ability of the Attorneys

Under these two *Johnson* factors, the Court should consider the skills required to litigate the Class Action and "the experience, reputation and ability of the attorneys" involved. From both a qualitative and quantitative perspective, the Settlement – and the substantial claims rate from Claims members -- confirms that Class Counsel provided the Class Members with outstanding legal services in litigating this case and securing the Settlement. The lead counsel law firms in this case – Fishman Haygood, LLP; Jones Swanson & Huddell, LLC; Boies Schiller Flexner LLP; Francis Mailman Soumilas, P.C.; and the Law Office of James Michel – are all highly regarded firms, not only in their respective markets but nationally, with vast experience in complex, high stakes litigation and class actions.[14]

Courts have also recognized that the quality of the opposition faced by Class Counsel should also be weighed when assessing the quality of Class Counsel's performance. *See I-Sys., Inc. v. Softwares, Inc.*, No. 02-cv-1951 (JRT/FLN), 2005 WL 1430323, at *12 (D. Minn. Mar. 7, 2005) (noting that "the extent of the work expended by plaintiffs' attorneys was not conducted in a vacuum. Rather, much of plaintiffs' attorneys' effort was spent responding to defendants' three sets of attorneys, whose participation and output in this case was prodigious"). Here, attorneys from the nationally recognized firm McGuireWoods LLP represented Navient throughout the course of the proceedings and proved formidable adversaries.

---

[14] *See* declarations filed by Class Counsel in Support of Plaintiffs' Motion for Class Certification by Lynn E. Swanson (Dkt. Rec. 28-9), Jason W. Burge (Dkt. Rec. 28-23), Adam Shaw (Dkt. Rec. 28-24), and the Declaration of Jim Francis, Exhibit G.

As noted above, this case presented novel legal issues that required Class Counsel to defeat countless motions on the district court level in four separate district courts across the nation, resulting in 6,300 hours of legal work across five different law firms over three-plus years of litigation. For these reasons, the Court should find that this Settlement meets these two additional *Johnson* factors.

### 4. The Monetary Amount Involved and the Results Obtained

"One of the factors in *Johnson,* 'the amount involved and the results obtained,' indicates that the level of a plaintiff's success is relevant to the amount of fees to be awarded." *Hensley v. Eckerhart*, 461 U.S. 424, 430 (1983); *see also Ewald v. Royal Norwegian Embassy*, No. 11-CV-2116 SRN/SER, 2015 WL 1746375, at *5 (D. Minn. Apr. 13, 2015) ("After the Court determines the lodestar, it may adjust the figure upward or downward, after taking into account various considerations, including the most important factor—the results obtained.").

By means of this Settlement, Navient has agreed to forego collection of 100% of the outstanding balance on Class Members' Covered Loans, resulting in debt forgiveness approaching $54 million. In addition, Class Members who made payments to Navient on the Covered Loans post-bankruptcy discharge will receive damages from Navient for a portion of those payments, in an amount equal to their pro rata share of the $28 million Settlement Fund, less Class Counsel's court-approved fees and expenses, Notice and Administrative Costs, and service fees for Class Representatives and Lead Plaintiffs in this and related cases. As noted above, the success of this Settlement is reflected in Class Members' response rate. The Claims Administrator received 2,678 claim forms out of the 11,791 forms mailed to class members – or a 23 % return rate[15] -- and the claims filed total $18,571,908.07 in Damages Post-Discharge, which means that borrowers have

---

[15] Additionally, of the 11,791 notices mailed, 1,672 or 14% had no claim for damages (meaning they had made no post-discharge payments), and hence would not be expected to return a claim form.

claimed almost 50% of the total possible damages of $37 million. Based on early data from the Claims Administrator, Class Counsel estimates that Class Members who filed claims for damages should receive between 65-75% of their claimed available damages, even after payment of fees and costs.

Further, as part of the Settlement Agreement, Navient has agreed to take steps to repair the credit reports of all Class Members, and Navient has also agreed to business practice enhancements to ensure that it does not collect on similar loans post-bankruptcy in the future, thus protecting future borrowers who may file bankruptcy in the future. Additionally, while these lawsuits were pending, Navient agreed to forebear collection on the Covered Loans after Class Counsel sought a temporary restraining order from the district court in the *Mazloom* case. This agreement gave Class Members over 2-1/2 years of payment reprieve on the Covered Loans during the pendency of the nationwide litigation fight. For these reasons, Class Counsel's request for fees is reasonable under this *Johnson* factor.

## 5. The Remaining *Johnson* Factors Support the Request for Attorneys' Fees

Finally, respectfully, the Court should find that the remaining *Johnson* factors support Class Counsel's attorneys' fees as well. Specifically, the novel legal issues in this case – and the Defendants' continued fight against the dischargeability of student loan debt and the jurisdiction of the district courts – made pursuing this case undesirable, primarily due to the high potential for defeat. As previously discussed, the requested fee of $14 million is comparable to the percentage recovered in similar class actions in this Circuit. In sum, the Court should find the award to be reasonable both under the percentage method and the lodestar method, and should further find that the requested award of $14 million meets the *Johnson* factors, thus justifying the full award of requested fees to Class Counsel.

### F. The Expenses and Costs Incurred Are Reasonable and Necessary to Achieve the Benefit Obtained

Class Counsel's fee application includes a request for reimbursement of litigation expenses that were reasonably incurred and necessary for the prosecution of this Class Action, as well as reimbursement for Notice and Settlement Administration costs.[16] "Counsel in common fund cases may recover those expenses that would normally be charged to a fee-paying client." *In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, No. MDL 05-1708, 2008 WL 682174, at *4 (D. Minn. Mar. 7, 2008).[17] Class Members were given notice of the fact that Class Counsel would seek to recover their out-of-pocket expenses in the Class Notice,[18] and no Class Member has objected to this aspect of the Settlement.

As set forth in Exhibit H,[19] and detailed in the Declarations of Class Counsel, the expenses incurred by each firm were: Fishman Haygood, LLP ($18,626.82); Jones Swanson & Huddell, LLC (13,054.04); Boies Schiller Flexner LLP ($46,487.48); and Francis Mailman Soumilas PC ($8,394.42).[20] This resulted in a total expense of $72,791.84. The expenses included in Class Counsel's reimbursement request are the types of expenses that are necessarily incurred in litigation and routinely charged and/or recovered from clients in both hourly and contingency fee contracts, such as court fees, filing fees, out-of-town travel, eDiscovery document hosting, and the

---

[16] *See* Exhibits D-G, Declarations of Class Counsel.
[17] *See also* Alba Conte, 1 Attorney Fee Awards § 2:19 (3d ed.), which explains:

> An attorney who creates or preserves a common fund by judgment or settlement for the benefit of a class is entitled to receive reimbursement of reasonable fees and expenses involved.

> The equitable principle that all reasonable expenses incurred in the creation of a fund for the benefit of a class are reimbursable proportionately by those who accept benefits from the fund authorizes reimbursement of full reasonable litigation expenses as costs of the suit in contrast to the more narrowly defined rules of taxable costs of suit under Fed. R Civ. P. 54 (d) .... The prevailing view is that expenses are awarded in addition to the fee percentage.

[18] *See* Notice of Proposed Class Action Settlement at p. 8, Section 18 (Rec. Dkt. 77-5).
[19] *See* Summary Table of Class Counsel Expenses, attached hereto as Exhibit H.
[20] *See* Exhibits D-G, Declarations of Class Counsel.

like. Because Class Counsel would have been responsible for these costs had this case not reached a successful resolution, Class Counsel had every incentive to – and in fact, did – only incur reasonable expenses.

Class Counsel also seek reimbursement of the Notice and Settlement Administration costs, which are currently projected to total around $500,000. Courts frequently reimburse Class Counsel for the costs associated with administering the class action settlement. *See Rawa v. Monsanto Co.*, No. 4:17CV01252 AGF, 2018 WL 2389040, at *9 (E.D. Mo. May 25, 2018), *aff'd*, 934 F.3d 862 (8th Cir. 2019) (awarding reimbursement of notice and administration costs of $630,944 and noting that "the administration and litigation costs will increase slightly, depending on remaining tasks for the Claims Administrator and Plaintiffs' counsel").

Class Counsel respectfully request that this Court grant Class Counsel's reimbursement request for expenses, as well as the Notice and Settlement Administration costs.

### G. The Class Representatives and Lead Plaintiffs are Entitled to Service Awards for Their Participation

Finally, Class Counsel also seek service awards of $15,000 each to compensate Class Representative Kenneth Joseph Woodard, as well as the Class Representatives and Lead Plaintiffs in the related actions -- Stephanie Mazloom, Kelly K. Coyle, Oscar D. Teran, Michael Shahbazi, and Robert and Molly Crandall -- for their active participation in their respective lawsuits, which ultimately led to the Settlement being effected through the *Woodard* action. "Courts often grant service awards to named plaintiffs in class action suits to 'promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits.'" *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017) (citation omitted). In analyzing whether a service award is warranted in a particular case, a court will consider "the actions [the Class Rep] took to protect the class's interests, the degree to which the class has benefitted from those actions, and the amount

20

of time and effort he expended in pursuing the litigation." *Campbell v. Transgenomic, Inc.*, No. 4:17-CV-3021, 2020 WL 2946989, at *5 (D. Neb. June 3, 2020). Courts in the Eighth Circuit "regularly grant service awards of $10,000 or greater." *Cleveland v. Whirlpool Corp.*, No. 20-CV-1906 (WMW/JFD), 2022 WL 2256353, at *11 (D. Minn. June 23, 2022) (citing Caligiuri); *see also Custom Hair Designs by Sandy, LLC v. Cent. Payment Co., LLC*, No. 8:17CV310, 2022 WL 3445763, at *6 (D. Neb. Aug. 17, 2022) (approving "service awards of $15,000 for each of the two Class Representatives for their service on behalf of the Class"). Class Counsel requests that the Court grant the payment of these service awards from the common fund, "which is appropriate under Eighth Circuit law." *Tussey v. ABB, Inc.*, No. 06-CV-04305-NKL, 2019 WL 3859763, at *6 (W.D. Mo. Aug. 16, 2019) (approving incentive awards of $25,000 to the named plaintiffs).

Here Woodard, as well as the Class Representatives and Lead Plaintiffs in the related cases, devoted substantial time to participating in this litigation, as detailed in their declarations.[21] Their collective active and willing participation in their respective cases helped Class Counsel ultimately achieve the end result for the benefit of the entire nationwide class. For these reasons, this Court should find the requests for service awards reasonable and award $15,000 to Kenneth J. Woodard, Stephanie Mazloom, Kelly K. Coyle, Oscar D. Teran, Michael Shahbazi, and Robert and Molly Crandall.

### H. Conclusion

For the foregoing reasons, Class Counsel respectfully requests that this Court award (1) attorneys' fees in the amount of $14 million; (2) reimbursement of $72,791.84 in Litigation Expenses; (3) reimbursement of Notice and Settlement Administration costs, which are currently

---

[21] *See* Declaration of Kenneth J. Woodard, attached hereto as Exhibit I; Declaration of Stephanie Mazloom, attached hereto as Exhibit J; Declaration of Kelly K. Coyle, attached hereto as Exhibit K; Declaration of Oscar D. Teran, attached hereto as Exhibit L; Declaration of Michael Shahbazi, attached hereto as Exhibit M; and  Declaration of Robert and Molly Crandall, attached hereto as Exhibit N.

projected to total $500,000; and (3) $15,000 service awards to the Class Representative, as well as the Class Representatives and Lead Plaintiffs in the related cases.

Dated: New Orleans, LA
    November 22, 2023

Respectfully submitted,
By: */s/ Jason W. Burge*

Jason W. Burge (*pro hac vice*)
SBN (LA) 30420
FISHMAN HAYGOOD L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
(504) 586-5252; (504) 586-5250 fax
jburge@fishmanhaygood.com

Lynn E. Swanson (*pro hac vice*)
SBN (LA) 22650
JONES SWANSON & HUDDELL LLC
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
(504) 523-2500; (504) 523-2508
lswanson@jonesswanson.com

George F. Carpinello
Adam R. Shaw
BOIES SCHILLER FLEXNER LLP
30 South Pearl Street
Albany, NY 12207
(518) 434-0600
gcarpinello@bsfllp.com
ashaw@bsfllp.com

James A. Francis
John Soumilas
Jordan M. Sartell
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market St., Suite 2510
Philadelphia, PA 19103
215-735-8600
215-940-8000 (fax)
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
jsartell@consumerlawfirm.com

Erika Angelos Heath
FRANCIS MAILMAN SOUMILAS, P.C.
369 Pine Street, Suite 410
San Francisco, CA 94104
628-246-1352
215-940-8000 (fax)
eheath@consumerlawfirm.com

James A. Michel
THE LAW OFFICE OF JAMES MICHEL
2912 Diamond St. #373
San Francisco, CA 94131-3208
415-239-4949
attyjmichel@gmail.com

***Counsel to Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2023, I caused the foregoing Memorandum of Law In Support of Plaintiffs' Motion For Attorneys' Fees, Expenses, and Class Representative Service Awards to be filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Jason W. Burge*
Jason W. Burge