IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KENNETH JOSEPH WOODARD, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NAVIENT SOLUTIONS, LLC and NAVIENT CREDIT FINANCE CORPORATION,<br><br>Defendants. | 8:23CV301<br><br>MEMORANDUM AND ORDER |

    This class action is before the Court on named plaintiff Kenneth Joseph Woodard's ("Woodard") unopposed Motions for Final Approval of Class Action Settlement (Filing No. 9) and to Accept Late-Filed Claims (Filing No. 35). *See* Fed. R. Civ. P. 23(e). Also before the Court is Woodard's counsel's ("class counsel") Motion for Attorneys Fees, Expenses, and Class Representative Service Awards (Filing No. 13) under Rule 23(h). The Court will certify the class, accept the late-filed claims, and approve the parties' settlement. Reasonable fees, expenses, and class representative awards are also awarded as described herein.

I.     BACKGROUND

    The parties' stipulation of settlement (the "settlement") in this matter represents the resolution of years-long disputes over defendants Navient Solutions, LLC and Navient Credit Finance Corporation's (together, "Navient") allegedly unlawful collection of dischargeable student-loan debt. Namely, Woodard and plaintiffs in related actions allege that they "have been subject to attempts by [Navient] to induce payment and collect on" private educational loans that "are fully dischargeable under § 523(a)(8) of the Bankruptcy Code." *See* 11 U.S.C. § 523(a)(8) (stating certain educational loans may

be dischargeable in bankruptcy where excepting such debt from discharge "would impose an undue hardship on the debtor and the debtor's dependents"). Each member of the settlement class has received a discharge order from a bankruptcy court, as well as the entry of a statutory injunction, which they allege should have halted collections on their pre-bankruptcy educational loans "for education at institutions that are not recognized as eligible institutions under Title IV of the Higher Education Act and the Internal Revenue Code" ("non-Title IV loans"). *See* 11 U.S.C. § 524(a)(2) (establishing that a discharge in a bankruptcy case "operates as an injunction against the commencement or continuation" of collections on discharged debt).

Since the initiation of the *Crocker* litigation in the Southern District of Texas, class counsel have sought nationwide relief for consumers impacted by Navient's challenged practices. *See In re Crocker*, 941 F.3d 206, 209-10 (5th Cir. 2019). After years of proceedings in the United States Bankruptcy Court for the District of Nebraska (Bankr. D. Neb. Case No. A21-8021-TLS), and in other districts across the country,[1] class counsel have succeeded in obtaining that relief through this settlement with Navient.

The settlement provides two forms of relief to class members. First, Navient agrees to "forever forego collection from all Discharged Non-Title IV Borrowers of the entirety of the amount of all outstanding balances . . . on Non-Title IV Covered Loans. This relief is estimated to account for over $54 million in class-member debt. Navient will relatedly ensure that class members' consumer-credit reports are corrected to "reflect that the[ir] loan was subject to a bankruptcy discharge."

---

[1] During the pendency of this action, class counsel have also pursued circuit- and district-wide relief for class members through several other proceedings in federal courts across the country. *See Mazloom v. Navient Solutions LLC*, Case No. 20-8033-6-wak (Bankr. N.D.N.Y.); *Teran v. Navient Solutions, LLC*, Case No. 20-0375 (Bankr. N.D. Cal.); *Coyle v. Navient Solutions, LLC*, Case No. 22-80018-jtg (Bankr. W.D. Mich.). All of those proceedings, in conjunction with the present matter, led to and are resolved by this settlement.

Second, Navient will pay $28 million to establish a common fund to pay for, in order of priority, the (1) notice and administration costs of the settlement, (2) taxes and tax expenses payable, (3) litigation fees and expenses of class counsel, (4) class-representative service awards, and (5) damages claims to class members who have submitted a claim form. According to class counsel, class members had filed around $19 million in damages claims at the time of the filing deadline and late-filing class members claimed another $597,195.82 in damages before December 8, 2023. Those claims represent the amount of allegedly dischargeable non-Title IV loan debt that Navient has collected from class members.

As part of the settlement, Navient has also agreed to alter its business practices surrounding the non-Title IV loans at issue here. In particular, it will take steps to ensure "no post-discharge collection activity will occur on any such loans against any discharged borrower or co-borrower."

After a hearing, the bankruptcy judge[2] preliminarily approved the settlement (Bankr. D. Neb. Case No. 21-08023-TLS, Filing No. 93) as "fair, reasonable, and adequate," having found that it was a reasonable result of "informed, good-faith, arms'-length negotiations." The matter was then transferred to this Court for final approval of the class-action settlement (Filing No. 3). Woodard moved for final approval on November 22, 2023.

That same day, class counsel moved the Court to award $14 million in attorney fees. They also seek $86,562.76 in legal expenses and project notice and settlement administration costs at around $500,000. Finally, they request the Court award $15,000 to six individuals who served as named plaintiffs in this case and related matters that led to the settlement.

---

[2]The Honorable Thomas L. Saladino, Chief Judge, United States Bankruptcy Court for the District of Nebraska.

3

The Court held a hearing to discuss both motions on December 8, 2023. At that time, class counsel indicated they would ask the Court to accept untimely claims filed up to the date of the hearing, which was unopposed by Navient. They filed that motion a few days later.

Navient has opposed the amount class counsel seek in attorney fees (Filing No. 25), calling the proposed $14-million award "excessive and overreaching." Neither Navient nor any class member has otherwise opposed the motions filed by Woodard and class counsel.

## II. DISCUSSION

### A. Class Certification[3]

To certify a class for purposes of settlement, the Court must ensure the class satisfies the relevant requirements of Rule 23. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-21 (1997) (explaining that "[s]ettlement is relevant to class certification" but that the certification requirements of Rule 23 are "undiluted" in the settlement context). The parties' settlement defines the class as "all Discharged Non-Title IV Borrowers," which is further identified as borrowers or co-borrowers of covered non-Title IV loans listed in Exhibit 1 of the settlement agreement.

Rule 23 requires first that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

---

[3]Class counsel sought class certification in each of the underlying proceedings and obtained certification in both this matter and *Teran*. *See Woodard v. Navient Solutions, LLC*, Case No. A21-8023-TLS, Filing No. 54 (Bankr. D. Neb. March 8, 2023) (certifying a class of "borrowers who filed for bankruptcy protection within the Eighth Circuit, received discharge orders, and were subject to post-discharge collection efforts by" Navient); *Teran v. Navient Solutions, LLC*, Case No. 20-0375-DM, Filing No. 135 (Bankr. N.D. Cal. March 30, 2023) (certifying a similar class of borrowers within the Ninth Circuit for purposes of damages claims and a nationwide class for purposes of injunctive relief).

and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Should the class satisfy Rule 23(a)'s requirements, the Court must also ensure the class action can be maintained under subsection (b). *See* Fed. R. Civ. P. 23(b) (setting forth the contexts in which class actions can be maintained).

First, the Court is satisfied the nationwide class of non-Title IV borrowers satisfies Rule 23(a)'s four requirements. The nearly 12,000-person class of borrowers is clearly sufficient to meet the rule's numerosity requirement as joinder of all members would be impracticable. *See Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982) (stating the size of the class, nature of the action, size of individual claims, and inconvenience of trying individual suits are all relevant to determining whether a class satisfies the numerosity requirement).

Additionally, the class satisfies the commonality requirement as its members have been identified by the parties to "have suffered the same injury"—the attempted collection of dischargeable non-Title IV loan debt by Navient. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). Because its members rely on the same legal theory regarding the dischargeability of their loans in seeking relief from Navient's collections practices, the class also easily meets Rule 23(a)'s typicality requirement. *See Custom Hair Designs by Sandy v. Cent. Payment Co., LLC*, 984 F.3d 595, 604 (8th Cir. 2020) (explaining the typicality and commonality analyses overlap and the typicality requirement is "fairly easily met" where class members have claims similar to the named plaintiff).

Finally, there appear to be no issues as to the adequacy of class representation here. *See* Fed. R. Civ. P. 23(a)(4). The record reveals no sign of any intraclass conflict, and the class representatives "share the class'[s] interest in procuring" the settlement's monetary and nonmonetary relief, as demonstrated in part by the lack of objectors to the settlement. *Paxton*, 688 F.2d at 563; *see also Custom Hair Designs*, 984 F.3d at 604-05.

The nationwide settlement class also satisfies Rule 23(b).  In particular, the Court agrees with the findings of the bankruptcy judge in this matter that this type of action fits within Rule 23(b)(3).  *See Dukes*, 564 U.S. at 362 (stating that "individualized monetary claims belong in Rule 23(b)(3)").  That subsection states that a class action "may be maintained" if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b); *see also Perras v. H & R Block*, 789 F.3d 914, 916 (8th Cir. 2015) (describing Rule 23(b)(3)'s "predominance" and "superiority" requirements).

The common questions of class members' claims regarding Navient's practice of collecting dischargeable debt and Navient's defenses to those claims predominate over any individualized findings that would have been necessary here.  *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 422, 453 (2016) (describing the predominance inquiry as one that "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues").  In fact, one of the only apparent individualized issues here is that of class members' damages, which—by itself—is an insufficient obstacle to a finding of commonality under Rule 23(b)(3).  *See Stuart v. State Farm Fire and Cas. Co.*, 910 F.3d 371, 377 (8th Cir. 2018).

Additionally, the class-action settlement is a superior vehicle for these claims.  *See Amchem Prods.*, 521 U.S. at 620 (stating that some factors like the presentation of management problems are irrelevant to "superiority" analysis at the settlement stage).  As the bankruptcy judge similarly noted, the class members are unlikely to individually pursue their claims against Navient for various reasons.  *See Custom Hair Designs*, 984 F.3d at 605.  Further, the interests of efficiency and judicial economy make "concentrating the claims in a single forum [] desirable."  *Stuart*, 910 F.3d at 377.  In

conclusion, the Court finds the present class of nationwide borrowers satisfies Rule 23(a) and (b) and is thereby certified for purposes of the class-action settlement's approval.

### B. Late-Filed Claims

As a preliminary matter, the Court will grant Woodard's motion to accept late-filed claims. The parties' agreement provided the deadline for filing claim forms would be set on "the date that is 90 days after the Notice Mailing Date." Settlement administrators mailed the notice of the settlement to class members on August 14, 2023, making the claims-filing deadline November 13, 2023. However, 123 class members ended up filing claims between November 14th and December 8th, asserting a total of $597,195.82 in additional damages which Woodard now moves to be included in the settlement.

While the Court retains equitable power to manage class-action settlements before fund distribution, it must discern the appropriateness of accepting late-filed claims from the totality of the circumstances surrounding the delay. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) (describing the courts' review of late filed claims as an "equitable one, taking account of all relevant circumstances surrounding the party's omission"). Woodard's initial motion did not give enough information to support that determination, so the Court ordered supplemental briefing on the matter (Filing No. 36), which he promptly submitted (Filing No. 37).

Generally, untimely class-action settlement claims may be accepted upon a showing of excusable neglect. *See, e.g.*, *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 321-23 (3d Cir. 2001); *Clark v. Runyon*, 165 F. Supp. 2d 920, 922 (D. Minn. 2001). Inherently flexible, that standard depends on multiple factors including "the danger of prejudice to the [parties], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer*

*Inv. Servs.*, 507 U.S. at 395 (stating that excusable neglect is an elastic concept "not limited strictly to omissions caused by circumstances beyond the control of the movant").

Woodard proffers various reasons why claimants were untimely in filing their claims. For the most part, those reasons relate to difficulties the settlement administrator faced in locating and contacting class members by mail and e-mail. Woodard's supplemental briefing supports an inference that there were general issues in effectuating notice of the claims process because of changes to class members' addresses and the potential impact of e-mail spam filters. Even after the settlement administrators finally reached those individuals, moreover, claimants struggled to verify the amount of their claim on short notice.

In the present context, these general concerns warrant the acceptance of all 123 late-filed claims. The danger of prejudice to either the class members or Navient is low. No one has objected to the acceptance of late-filed claims and they account for a mere 3.1% increase in damages claims. The delay in filing the claims also amounted to less than a month and caused no interruption to the proceedings in this matter. Finally, while Woodard has not provided independent support for each claimant's delay, the late-filers generally appear to have struggled to receive timely notice of the claims process and acted promptly and in good faith after they did.

C. **Settlement Approval**

Rule 23(e) gives the Court the power to review and approve settlements reached in class actions. Pursuant to that rule, the Court has reviewed the parties' submissions and held a hearing to determine whether their settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2).

The Court agrees with the bankruptcy judge that the settlement is the result of arms'-length negotiations between the parties. *Id.* Further, based on the record and

information provided at the hearing, the Court is satisfied that class representatives and class counsel in this matter have adequately represented the class.  *Id.*

To approve the parties' settlement under Rule 23(e)(2)(C), the Court must also decide the relief achieved for the class is adequate, accounting for "the costs, risks, and delay of trial and appeal," "the effectiveness of any proposed method of distributing relief to the class," "the terms of any proposed award of attorney's fees," and "any agreement made in connection with the proposal."

The Eighth Circuit has provided four factors to guide the Court's findings: "(1) the merits of the plaintiff's case weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement."  *In re Uponor, Inc. F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) (quoting *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)).  "The single most important factor in" the Court's determination is a "balancing of the strength of the plaintiff's case against the terms of the settlement."  *Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) (quoting *Van Horn*, 840 F.2d at 607).

Here, the first and most important factor weighs in favor of approving the settlement.  Before the expansion of class counsel's litigation against Navient, only one federal appellate court had found the challenged debt to be dischargeable.  *See In re Crocker*, 941 F.3d at 224.  Navient also continues to deny any unlawful collection of the class members' debt and has asserted several affirmative defenses to their legal claims.  *See Keil v. Lopez*, 862 F.3d 685, 695 (8th Cir. 2017) (concluding that the defendant "continued to deny knowledge and liability, and [] maintained nine affirmative defenses" weighed in favor of approval).  Thus, "'the outcome of the litigation would be far from certain' if the case had not settled."  *Id.* (quoting *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005)).

9

Relatedly, class counsel's difficulty in securing class certification and nationwide injunctive relief—which would have possibly required succeeding in every district in which they litigated—adds additional weight toward approval. Taken together, the uncertainty of the merits of the parties' claims and defenses, Navient's zealous defense against the litigation, and the difficulties of managing a broad, multistate class of consumers contribute to the strength of this factor. *See id.* (finding this factor weighed in favor of approval where class-management issues made it uncertain whether the case would proceed to trial).

Second, the parties do not dispute that Navient's financial condition presents no hurdle to this settlement. Woodard asserts, without objection, the settlement's monetary relief "will be paid from insurance proceeds," mitigating any negative effect the settlement may have for Navient. Navient's financial standing is therefore a neutral factor in the Court's review of the settlement. *Marshall*, 787 F.3d at 512.

Third, the complexity of the litigation in the various actions underlying this settlement also weighs in favor of approval. In its analysis, the Court considers, among other things, the complexity of legal questions presented, the conflict-of-law analyses required, the application of numerous state laws, the individualized, speculative, or disputed nature of damages claims, and the length of prior litigation. *See Marshall*, 787 F.3d at 512.

Several factors demonstrate the enormous burden that would be borne for class members to obtain the same benefit of the parties' settlement through litigation. The proceedings leading up to this settlement have spanned many years. The first temporary restraining order on collections of the challenged debt was issued over seven years ago on August 5, 2016. *See In re Crocker*, 585 B.R. 830, 833 (Bankr. S.D. Tex. 2018), *rev'd in part by In re Crocker*, 941 F.3d at 224. Furthermore, given the obstacles to obtaining nationwide relief, class counsel found it necessary to pursue a patchwork method of litigating in various districts, adding to the demanding nature of the proceedings. In those

10

actions underlying the settlement, class counsel have already litigated—in the face of challenges from Navient—complex issues related to motions for temporary restraining orders, class certification, arbitration, and summary judgment.

Finally, the lack of opposition to the settlement weighs in favor of approval. Notably, there are no objections to the terms of the settlement from Navient nor any of the approximately 11,000 class members. Only four individuals attempted to opt out of the settlement, none of whom seem to particularly object to the terms of the agreement itself. Such apparent satisfaction is especially exceptional given the size of this class. *See Marshall*, 787 F.3d at 513 (considering the number of objections to the class-action settlement in light of the amount of total class members).

After careful review of these factors, the Court finds the terms of the settlement provide adequate relief for class members. The settlement provides a healthy sum for class members who paid Navient on challenged loan debt and awards them what they've long sought—forgiveness of any outstanding non-Title IV loan debt. *See Keil*, 862 F.3d at 695-96 (finding the *Van Horn* factors favored approval where class members obtained millions in cash relief through the settlement of complex and uncertain claims). The foregoing analysis supports a finding that the settlement is fair, reasonable, and adequate.

### D. Attorney Fees

The Court next turns to the "terms of any proposed award of attorney's fees" and any impact it may have on the class members' relief. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). The federal rules set forth multiple requirements for attorneys seeking fees in a class action matter. Fed. R. Civ. P. 23(h). First, counsel must move for an award of fees and provide notice of their motion to all parties and class members in a reasonable manner. *Id.*; *cf. Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999) (stating that, to comport with Rule 23(e), notice of a class-action settlement must meet the "broad reasonableness standards imposed by due process"). Second, they must demonstrate to the Court that the amount sought is reasonable. *See* Fed. R. Civ. P. 23(h).

Under Rule 23(h), the Court's review of class counsel's request for attorney fees should be scrupulous. "Active judicial involvement in measuring fee awards is singularly important to the proper operation of the class-action process." Fed. R. Civ. P. 23 advisory committee's note to 2003 amendment, subdivision (h). "[T]he district court must ensure that the amount and mode of payment of attorney fees are fair and proper whether the fees come from a common fund or are otherwise paid. Even in the absence of objections, the court bears this responsibility." *Id.*

To start, class counsel gave adequate notice to the parties and class members of their motion for attorney fees in compliance with Rule 23(h)(1). In the settlement notice sent to class members, class counsel described their intent to apply to the Court "for an award of attorneys' fees . . . not to exceed $14,000,000." The notice also informed class members they planned to apply for reimbursement of expenses and service awards for class representatives, all to be taken out of the common fund. Such notice comports with the reasonableness requirement of due process and satisfies Rule 23's mandate.

The amount of attorney fees requested by class counsel warrants more scrutiny. Courts in this circuit have "discretion to use either" the lodestar or percentage-of-the-fund methodology in awarding attorney fees in class-action settlements. *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 977 (8th Cir. 2018); *see also In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 622 (8th Cir. 2017). In using either of these methods, the Court should also consider the relevant factors originally set forth by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 719-20 (5th Cir. 1974). *See In re Target Corp.*, 892 F.3d at 977. Those include the following:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the

amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."

*Id.* at 977 n.7.

Class counsel state their requested $14-million award would amount to only "17% of the total recovery for student loan borrowers through this settlement." *See Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (stating "courts have frequently awarded attorneys' fees ranging up to 36% in class actions"). That percentage was calculated by summing the total amounts of the $28 million common fund and $54 million in debt forgiveness. They also state the requested award "represents a 3.35 lodestar multiplier" that is reasonable under circuit precedent. *See id.* at 400 (finding a 1.82 lodestar multiplier was "well within the range of multipliers awarded in this and other circuits"); *Nelson v. Wal-Mart Stores, Inc.*, No. 05-cv-000134, 2009 WL 2486888, at *2 (E.D. Ark. Aug. 12, 2009) (citing cases within the Eighth Circuit approving multipliers between 2.0 and 5.6). Overall, class counsel asserts that amount is a reasonable fee in light of either method of calculation as well as the *Johnson* factors.

Navient, on the other hand, "believes that an award of $5 million for attorneys' fees is appropriate, as it is an amount in accord with typical student loan and debt relief settlements under the percentage-of-the-benefit method and in accord with a more typical lodestar multiplier." In particular, Navient asserts the debt relief should not be considered "on a dollar-for-dollar basis" in calculating any percentage-based award. *See Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 147 (E.D. Penn. 2000) (noting that "[d]ebt forgiveness for students who are already delinquent in paying back their loans arguably does not have the same value as cash in hand" but ultimately finding "it reasonable to include debt forgiveness in the total settlement value"). In the same vein, it believes a fee award amounting to "half of the total cash consideration under" the settlement "would be well outside the bounds of the ranges found acceptable" by the

13

Eighth Circuit. Navient also argues that class counsel have failed to provide the detail necessary for the Court to "perform an adequate lodestar calculation."

The truth appears to lie somewhere in the middle of these positions. To start, the Court believes the benefit to the class lies well above Navient's $30.5-million calculation. Where, as here, many class members are entitled only to nonmonetary relief through a settlement, "it is important to recognize that . . . the monetary relief obtained is not the sole determinant of an appropriate attorney fees award" and to adequately consider nonmonetary relief that has "actual value to the class" in awarding fees. Fed. R. Civ. P. 23 advisory committee's note to 2003 amendment, subdivision (h).

Some courts have found nonmonetary relief to have little or no value in calculating a percentage-of-the-benefit award where such relief is practically illusory. *See*, *e.g.*, *Briseño v. Henderson*, 998 F.3d 1014, 1028-29 (9th Cir. 2021) (finding the settlement's nonmonetary relief had no value because it only obligated the defendant to do something it was already doing). That is not the case here, despite Navient's suggestions to the contrary. As highlighted at the hearing, Navient had not voluntarily halted collections on the class members' loans. In fact, it maintained they were collectible throughout the proceedings. Temporary restraining orders, successful litigation, and—eventually—this settlement were the only actual assurances that class members received that they would not have to pay back their debt. The debt relief also has value in its broader impact on class members' credit reports and general financial wellbeing. Thus, the Court cannot justify calculating the benefit of that debt relief at only a nickel-on-the-dollar as Navient suggests.[4]

---

[4] Even if the Court did accept Navient's valuation of the debt forgiveness, a $5 million award would represent a paltry 16% percentage-of-the-benefit award, which would fall well below the awards generally given to class counsel in this circuit. *See*, *e.g.*, *In re Life Time Fitness*, 847 F.3d at 622-23 (upholding an award of 28% of a $10-million common fund); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (upholding an award of 36% of a $3.5-million common fund).

On the other hand, there is some logic to Navient's arguments that the debt relief may not be accurately assessed at a dollar-for-dollar rate and that the 50% cut of the settlement fund that a $14-million award represents causes some concern. *See Curry v. Money One Fed. Credit Union*, No. SKC 19-3467, 2021 WL 5839432, at *4-*5 (D. Md. Dec. 9, 2021) (describing the difficulty of valuing the benefit of debt forgiveness to class members). The Court is particularly concerned that an award representing 50% of the common fund would fail to treat "class members equitably relative to each other." *See* Fed. R. Civ. P. 23(a)(2)(D). If the Court awards the requested $14 million in attorney fees, the amount left in the fund would be sufficient to pay class members a maximum of 68.33% of their damages claims. Those class members that are entitled solely to nonmonetary relief, however, would receive 100% of the settlement's nonmonetary relief. The Court's calculations demonstrate that, the larger the award, the greater the inequity that results among class members.

Therefore, while the Court is generally convinced that class counsel's requested attorney-fee award falls near a reasonable percentage-of-the-benefit amount, broader fairness concerns warrant a reduction of that award. The Court believes an award of $10,750,000 is reasonable to avoid the illustrated inequity of a larger award as it would leave sufficient funds to ensure class members are paid up to 85% of their monetary claims.[5]

That amount is also appropriate in light of the *Johnson* factors and adequate to compensate class counsel's effort in this litigation. Class counsel have conducted several years of litigation in challenging Navient's collections of Non-Title IV private student loans. As described above, those proceedings required litigating a diverse array of complex issues and presenting relatively novel arguments regarding the dischargeability

---

[5]This award would constitute around 35% of Navient's valuation of the settlement's benefit to class members, which is not obviously unreasonable under the *Johnson* factors or in comparison to other awards issued within this circuit in similar circumstances.

of class members' debt.  The combination of monetary and equitable relief class counsel achieved for class members is also significant.  Altogether, the Court's review of the *Johnson* factors demonstrate an attorney-fee award of $10,750,000 is reasonable in the present context.

> E.   **Litigation Expenses and Claims-Administration Costs**

Class counsel also seek a reimbursement of litigation fees and expenses to be paid from the common fund in the amount of $86,562.76.  *See* Fed. R. Civ. P. 23(h) (providing that the Court may award reasonable nontaxable costs "authorized by law or by the parties' agreement").  Relatedly, they state the "Notice and Administrative Costs" of the settlement, also to be paid out of the common fund, is likely to cost around $500,000.  *See id.*; *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017) (explaining "it is common for courts to approve settlements after receiving only estimates of administrative costs" because those costs "continue to accrue throughout" the claims administration process).  There are no objections from class members or Navient as to these costs.

Class counsel have provided adequate support for the amount of out-of-pocket expenses they report to have incurred in this matter.  The Court finds the $86,562.76 in expenses to be reasonable in light of the multi-year, multi-district litigation that led to this settlement, and awards that amount for class counsel to appropriately distribute between themselves.  *See In re U.S. Bancorp Litig.*, 291 F.3d at 1038 (upholding a costs award of $40,000 as appropriate where the parties' settlement resulted in a $2 million common fund); *In re Life Time Fitness*, 847 F.3d at 624 (stating the district court can allow class counsel to allocate expenses amongst themselves).

The Court also finds the $500,000 requested from the common fund for notice and claims-administration expenses to be reasonable.  At the time of the hearing, settlement administrators had already expended significant effort to effectuate notice to the nearly twelve-thousand potential class members via mail, email, and online advertising.  The

administrators also attested to managing a settlement website, where individuals could learn about the settlement and submit an online claim form, and operating a toll-free number, which has already received over two-thousand calls. Thus, pursuant to the parties' agreement, the Court will set aside $500,000 of the common fund as reasonable notice and administration costs of the settlement.

### F. Class-Representative Awards

Finally, class counsel's motion seeks $15,000 class-representative awards for six individuals involved in this matter and other proceedings underlying the settlement. *See Caligiuri*, 855 F.3d at 867 (stating that courts frequently grant "awards to named plaintiffs in class action suits to promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits"). Those individuals include Woodard, Stephanie Mazloom, Kelly K. Coyle, Oscar D. Teran, Michael Shahbazi, and Robert and Molly Crandall, all of whom served as named plaintiffs at one some point in the various putative class proceedings against Navient. Neither Navient nor any class member has objected to these requested awards.

In granting a service award, the Court must consider the "actions the plaintiffs took to protect the class's interests," "the degree to which the class has benefitted from those actions," and "the amount of time and effort the plaintiffs expended in pursuing litigation." *Id.*; *see also Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Courts in the Eighth Circuit "regularly grant service awards of $10,000 or greater" to class representatives who have participated in the litigation to the benefit of other class members. *Id.* (upholding service awards of $10,000 where plaintiffs participated in interviews, discovery, depositions, and conferences with counsel); *see, e.g.*, *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 952 (D. Minn. 2016) (finding the requested $27,500 service award to be excessive where the named plaintiff did not need to be incentivized to file suit, but awarding them $15,000 because he participated in discovery and turned down a sum to settle the matter to continue litigation as a class); *Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 629 (S.D. Iowa 2016) (awarding the named

17

plaintiffs $10,000 where they participated in discovery, depositions, and maintained contact with counsel for years).

The $15,000 service awards requested by class counsel here are warranted by the named plaintiffs' participation in this litigation. Each of the named plaintiffs meaningfully participated in the proceedings against Navient, including by assisting with discovery responses, participating in depositions, testifying at court proceedings, executing declarations in pursuit of class certification, and corresponding with class counsel. Woodard himself participated in the mediation with Navient that led to the successful settlement of the class members' claims.

Based on the active role each named plaintiff took in these proceedings, to the benefit of other class members, the Court finds the $15,000 service award for the six identified individuals is appropriate.

### III. CONCLUSION

In light of the awards issued above, the Court finds the stipulated settlement in this class-action matter is fair, reasonable, and adequate, and should be approved. Fed. R. Civ. P. 23(a)(2). As such,

IT IS ORDERED:
1. Plaintiff Kenneth Joseph Woodard's Motion for Final Approval of Class Action Settlement (Filing No. 9) is granted.
2. The settlement class is certified under Rule 23(a) and (b)(3).
3. Woodard's Motion to Accept Late-Filed Claims (Filing No. 35) is granted.
4. Class counsel's Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards (Filing No. 13) is granted in part and denied in part.
5. Class counsel are awarded $10,750,000 in attorney fees, to be paid from the common fund and allocated appropriately among themselves.
6. Class counsel are awarded $86,562.76 in litigation fees and expenses, to be paid from the common fund and allocated appropriately among themselves.

7. Class counsel are awarded $500,000 in notice and settlement administration costs, to be paid from the common fund.

8. Class representatives Kenneth Joseph Woodard, Stephanie Mazloom, Kelly K. Coyle, Oscar D. Teran, Michael Shahbazi, and Robert and Molly Crandall are each awarded $15,000, to be paid from the common fund, for their service in the proceedings against Navient.

Dated this 9th day of January 2024.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge